UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MICHAEL L. SMITH,

                      Petitioner,

    v.

RENEE BAKER,[1]  et al.,

                    Respondents.

Case No. 3:13-cv-00246-RCJ-CSD

ORDER

Michael L. Smith's 28 U.S.C. § 2254 second-amended habeas corpus petition is before the court for final adjudication on the merits (ECF No. 44). As discussed below, the petition is denied.

## I.    Background & Procedural History

As set forth in this court's order granting in part respondents' motion to dismiss, a grand jury indicted Smith, along with Adrian McKnight and Ronnie Antonio Gibson, on two counts conspiracy to commit robbery, one count robbery, one count battery with intent to commit a crime, two counts robbery with victim 60 years of age or older, one count murder, one count attempted murder, and one count possession of stolen vehicle (exhibits 5, 6).[2] The charges stemmed from two separate robberies committed on or

---

[1] According to the state corrections department's inmate locator page, Smith is incarcerated at Ely State Prison. The department's website reflects William Gittere is the warden for that facility. At the end of this order, the court directs the clerk to substitute William Gittere for prior respondent Renee Baker, under, *inter alia*, Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Exhibits 1-208 are found at ECF Nos. 10-19.  Exhibits 224-306 are found at ECF Nos. 53-68.

about May 29, 2007, that resulted in the death of one of the elderly victims.  *Id*. In June

2009, a jury convicted Smith of all charges, with the exception of finding Smith guilty of

battery instead of attempted murder. Exh. 105.  The state district court sentenced Smith

to two consecutive life sentences without the possibility of parole. Exh. 120. Judgment

of conviction was filed on August 6, 2009. Exh. 120.

The Nevada Supreme Court affirmed Smith's convictions. Exh. 149. After

conducting an evidentiary hearing on his state postconviction habeas corpus petition,

the state district court denied the petition.  Exh. 172. The Nevada Supreme Court

affirmed the denial of the petition on December 12, 2012.  Exh. 193.

Smith dispatched his federal habeas corpus petition for filing in April 2013 (ECF

No. 5).  This court granted his motion for appointment of counsel (ECF No. 4). Smith

filed a counseled, first-amended petition and a motion for stay and abeyance, which this

court granted (ECF Nos. 9, 34, 39). The case was stayed while Smith litigated his

second state postconviction petition.  Exhs. 282, 287, 290, 298. On April 11, 2018, the

Nevada Court of Appeals affirmed the denial of his second state postconviction petition.

Exh. 303. In July 2018, Smith filed a motion to reopen the case and a second-amended

petition (ECF Nos. 41, 44). Respondents have now answered the remaining claims, and

Smith replied (ECF Nos. 93, 98).

## II.     Legal Standard

### AEDPA Standard of Review

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty

Act (AEDPA), provides the legal standards for this court's consideration of the petition in

this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state

1    court's application of clearly established law must be objectively unreasonable. *Id*.

2    (quoting *Williams*, 529 U.S. at 409).

3         To the extent that the state court's factual findings are challenged, the

4    "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas

5    review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause

6    requires that the federal courts "must be particularly deferential" to state court factual

7    determinations. *Id*. The governing standard is not satisfied by a showing merely that the

8    state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires

9    substantially more deference:

10              .... [I]n concluding that a state-court finding is unsupported by
            substantial evidence in the state-court record, it is not enough that we
11          would reverse in similar circumstances if this were an appeal from a
            district court decision. Rather, we must be convinced that an appellate
12          panel, applying the normal standards of appellate review, could not
            reasonably conclude that the finding is supported by the record.
13
         *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393
14
     F.3d at 972.
15

16        Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be

17   correct unless rebutted by clear and convincing evidence. The petitioner bears the

18   burden of proving by a preponderance of the evidence that he is entitled to habeas

19   relief. *Cullen*, 563 U.S. at 181.

20        **III.    Trial Testimony**

21
          Shane Burton testified that his 1996 Honda Accord was stolen out of his Las
22
     Vegas, Nevada driveway sometime between 2:30 p.m. and 11:30 p.m. on May 28,
23
     2007.[3]  Exh. 90, pt. 1, pp. 109, 112; exh. 94, p. 144. Katherine LaBelle testified that she
24

25

26   _____

27        [3] The court makes no credibility findings or other factual findings regarding the truth or
     falsity of evidence or statements of fact in the state court record. The court summarizes the same
     solely as background to the issues presented in this case, and it does not summarize all such
28   material. No assertion of fact made in describing statements, testimony, or other evidence in the
     state court constitutes a finding by this court. Any absence of mention of a specific piece of

                                                  4

parked at her new apartment complex in Las Vegas around 11:30 p.m. that night. Exh. 90, pp. 69-107.  She saw a man walk out from the dumpster area and sit on an electrical box about 25 feet away. As she walked by him, he ran over, grabbed her purse, tripped, and fell right in front of her. LaBelle started hitting him, and he curled up around her purse. Someone grabbed her from behind and she began yelling. Neighbors came out, the man grabbing her dropped her into the bushes, and both men fled. Her phone and car keys had fallen out of the purse when the man was on the ground. A car drove out of the complex, and LaBelle recognized the taillights as those of a Honda. Both men were black, one was bigger and heavy-set, and the man who grabbed her was on the thinner side. Police later recovered receipts from when LaBelle went shopping earlier in the day as well as a Bacardi cigarette case that had been in her purse from the stolen Honda. She had had approximately $200-250 cash in her purse.

Lydia Nieva testified that she and her husband Angel were on vacation in Las Vegas and staying at their timeshare. Exh. 91, pp. 63-119; exh. 92, pp. 16-27.   They returned to the timeshare about 2 a.m. on the night/morning in question. As Lydia was using her door key card, she saw two men run up from her left. They grabbed her tote bag.  She stated that the men were black and perhaps in their twenties. She was yelling, and the men hit her several times in the face and arms.  Angel had been walking behind Lydia, and she saw that he was on the ground, face up.  After the men fled with her bag, Lydia ran into the reception area to get help and returned to her husband with a taxi driver. Angel was "snoring very hard," and she couldn't wake him. She identified the contents of her tote bad that were recovered from the trunk of a car, including family

---

evidence or category of evidence does not signify the court overlooked it in considering Smith's claims.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

photos, credit cards, and driver's license. Angel was declared brain dead about a day later due to a severe head injury.

A forensic pathologist with the Clark County Coroner's office testified that he reviewed Angel Nieva's autopsy report and agreed with the conclusion that Angel died from blunt force head injury in the manner of homicide. Exh. 92, pp. 28-46. He stated that Angel's head injury was consistent with being slammed down on the asphalt parking lot.

Smith, Knight and Gibson were to be tried together, but Ronnie Gibson elected to plead guilty to voluntary manslaughter, robbery and conspiracy to commit robbery and testified for the State. Exh. 92, pt. 1, pp. 55-122, 127-161; exh. 92, pt. 2, pp. 2-92. He, Smith, and McKnight were together on the night in question. Smith stole the Honda, and they drove to an apartment complex parking lot. Smith got out and told Gibson to get in the front seat and honk the horn if Gibson saw anyone coming. McKnight sat on an electrical box, then he and Smith ran up to a woman, grabbed her purse, and ran back to the car. Gibson drove off. Shortly thereafter, Smith switched to the driver's seat. Smith spotted the Nievas driving, noted their California license plate and started following them. They formed a plan in which Smith and Gibson would approach the female and McKnight would approach the male. Ultimately, however, Gibson did not participate. They followed the Nievas to their timeshare parking lot. He said he was urinating near the pool when he heard the woman scream. He looked over and saw McKnight "slamming the dude." *Id*. at 80. Gibson said McKnight grabbed Angel by his belt buckle and slammed him to the ground; the back of his head struck the ground first. Gibson saw Smith punching Lydia in the face and screaming for her to take off her ring. She fell to her knees, and Smith kicked her in the face. The three men fled in the Honda. Two or three days later Gibson was on the bus with his girlfriend, Kennisha

Lyons, and Smith and McKnight got on the bus. They told Gibson that television news was reporting that Angel had died.

Lyons testified that she was on the bus with Gibson, and they encountered two men. Exh. 92, pt. 2, pp. 93-117.  She could only identify one in court – Smith. Smith told Gibson that he saw on the news that Angel had died. Smith commented that the other guy had slammed Angel onto the concrete and that Lydia had been bloody and disoriented.

Detective Barry Jensen testified that police obtained warrants to trace the Nievas' stolen cell phones. Exh. 94, pp. 93-158; exh. 100, pp. 5-54.  Later, Smith told the detective that he stole the Honda and let some other people use it but did not participate in any robberies. He said he got the cellphone from the Honda when it was brought back to him. Detective Jensen also said that McKnight admitted to him that he had committed the Nieva robbery. McKnight said his role was to rob Lydia. McKnight said he punched Lydia, and she let go of her purse. McKnight denied involvement in the Katherine LaBelle robbery. Jensen also testified that LaBelle identified Smith from a photo lineup.

### IV.   Instant Petition

#### a.  Claims Raised on Direct Appeal

**Ground 1**

Smith asserts that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights to present a defense, be proven guilty beyond a reasonable doubt, confrontation, due process and a fair trial when it refused to sever Smith's trial from his co-defendant's (ECF No. 44, pp. 18-25). Smith's counsel filed a motion to sever based on the conflicting statements that Smith, McKnight, and Gibson gave to the police. The motion argued that defenses outlined in the statements were "antagonistic and mutually

1   exclusive." Smith's counsel stressed that Smith was the only one of the three who

2   denied any part in the Nieva robbery and murder.

3           Under Nevada state law, defendants are not entitled to separate trials without a

4   substantial showing of facts demonstrating that prejudice would result from a joint trial.

5   *See Amen v. State*, 801 P.2d 1354, 1358-59 (Nev. 1990). "Inconsistent defenses must

6   be antagonistic to the point that they are mutually exclusive." *Id*. at 1359. The decision

7   to sever is left to the discretion of the trial court and such decision will not be reversed

8   absent an abuse of discretion. *Id*. at 1359; *McDowell v. State*, 746 P.2d 149 (Nev.

9   1987). The United States Court of Appeals for the Ninth Circuit Court has held that

10  where persons have been jointly indicted, they should be tried jointly, absent compelling

11  reasons to the contrary. *U.S. v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980), cert.

12  denied, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980); *U.S. v. Silla*, 555 F.2d 703,

13  707 (9th Cir. 1977). This is also the rule in conspiracy cases. *Escalante*, 637 F.2d at

14  1201. The Ninth Circuit has described mutually exclusive defenses as when "the core of

15  the codefendant's defense is so irreconcilable with the core of [the defendant's] own

16  defense that acceptance of the codefendant's theory by the jury precludes acquittal of

17  the defendant." *U.S. v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996). Moreover, the

18  Ninth Circuit has observed that there is no clearly established federal law mandating

19  "the severance of criminal trials in state court even when the defendants assert mutually

20  antagonistic defenses. . ."  *Runningeagle v. Ryan*, 686 F.3d 758, 774 (9th Cir. 2012).

21          Smith argues that the denial of the motion to sever violated his rights under

22  *Bruton v. United States*, 391 U.S. 123 (1968). The three men's version of events in their

23  statements to police differ, most significantly each claimed they had no contact with

24  Angel. During Smith's interview with police, he initially said he had no specific

25  recollection of stealing Burton's Honda but admitted that he had stolen vehicles in that

26  area of town before. *See* exh. 18. Smith said sometimes he stole vehicles and other

27  people would pay to use them, whether in cash or stolen items.  Smith said he had not

28

been present at the robbery but got the Nievas' cell phone from another individual and also went through Lydia's tote bag before discarding it.

McKnight admitted in his interview that he was involved in the Nieva robbery. He said he grabbed Lydia's tote bag and punched her. *See* exh. 21. He denied involvement in the LaBelle robbery. Gibson told police in his interview that he drove the vehicle during the LaBelle robbery. He said that he and two others later spotted the Nievas. Gibson said when they got out of the vehicle, he went to urinate. When he turned around, he saw Angel get slammed to the ground. He described where they had discarded the tote bag, which matched the statement of the woman who later found some of the Nievas' belongings and turned them into police.

At the evidentiary hearing on the motion to sever counsel for McKnight argued that there was no feasible way to redact the statements to eliminate references to McKnight or Smith that would leave the jurors with statements that made any sense. Exh. 52, pp. 6-38. McKnight's counsel pointed out that Gibson's statement was particularly problematic because redacting references to both McKnight and Smith would eviscerate the statement. He suggested one alternative was to suppress the statements entirely. Counsel for Smith joined in arguing that severing the trials or suppressing the statements was appropriate.

At a subsequent hearing the court inquired as to the status of the proposed redactions:

> THE COURT: . . . And we were going to pass this, and we did, in fact, pass it so that counsel could go over the redacted version of the statements. Have you done that counsel?
>
> MS. DUSTIN [Counsel for McKnight]: Yes, Your Honor.
>
> MR. BLOOMFIELD [Counsel for Smith]: We did. . . .
>
> THE COURT: . . . Are we agreed then that the redacted version will suffice? Or what's the status?
>
> MS DUSTIN: Well, Your Honor, I've reviewed the redactions and Mr. Bloomfield's reviewed the redactions I think Mr. Stanton has done an excellent job in trying to definitely sanitize this. I mean, I've already noted

my position that even though we're using this generic discussion to refer to the other people that are present, it's just really not going to take a rocket scientist to figure out who they're talking about. So that's my continued objection that I have here, is that I still think that underneath our case law just generically switching it to "he" and "they" in the totality of circumstances still inculpates my client. But I'm not going to relitigate that standing before Your Honor, but that's always been my continuation objection. Other than that, I think Mr. Stanton, the fact that we're not actually admitting the statements, that it would just be testimony elicited through the detective. And I don't know how he's going to just, basically, say Ronnie Gibson told me that X-Y-Z. I'm sure we'll work out the logistics on that, Your Honor.

THE COURT: Now, is that correct. Mr. Stanton, that you do not intend to admit into evidence any part of these statements?

[Deputy District Attorney] MR. STANTON: Yes Judge . . . in my case in chief I plan to introduce the highlighted portion of the respective transcripts either in a direct Q and A with the detective of the highlighted portions substituting the neutral pronouns, or merely stating to the detective: What did Mr. Gibson say he did at Line 14 through 16, and then not referring to anybody else.

Exh. 55, pp. 4-6.

The Nevada Supreme Court considered this claim at some length:

Severance

Smith next complains about the district court's denial of his motion to sever his trial from that of his codefendant. "The decision to sever a joint trial is vested in the sound discretion of the district court and will not be reversed on appeal unless the appellant 'carries the heavy burden' of showing that the trial judge abused his discretion." *Buff v. State*, 114 Nev. 1237, 1245, 970 P.2d 564, 569 (1998) (citing *Amen v. State*, 106 Nev. 749, 756, 801 P.2d 1354, 1359 (1990)). Although some prejudice may inhere in a joint trial, "error in refusing to sever joint trials is subject to harmless error review." *Chartier v. State*, 124 Nev. 760, 764- 65, 191 P.3d 1182, 1185 (2008). Reversal is only justified if refusal to sever a joint trial had "'a substantial and injurious effect on the verdict.'" *Id*. at 765, 191 P.3d at 1185 (quoting *Marshall v. State*, 118 Nev. 642, 647, 56 P.3d 376, 379 (2002)).

The district court's refusal to sever did not unfairly prejudice Smith. To the contrary, he was the beneficiary of a pretrial ruling, later reversed towards the end of the trial, that precluded his codefendant from implicating Smith but that did not limit Smith or prohibit him from blame-shifting in any way.

Smith argues that denial of a severance required the prosecution to asked leading questions during direct examination in order to avoid a problem under *Bruton v. United States*, 391 U.S. 123 (1968), resulting in prejudice. However, Smith failed to object to any of the leading questions below. Failure to object during trial generally precludes appellate review unless it rises to the level of plain error that affects substantial rights. NRS 178.602; *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 94-95 (2003); *Rippo v. State*, 113 Nev. 1239, 1259, 946 P.2d 1017, 1030 (1997). In addition, this court has made plain that the district court has discretion to permit leading questions on direct examination. NRS 50.115(3)(a); *Leonard v. State*, 117 Nev. 53, 70, 17 P.3d 397, 408 (2001).

Here, we conclude that any prejudice that may have resulted from the leading questions did not rise to the level of affecting Smith's substantial rights. In fact, the district court allowed leading questions to the benefit of both Smith and his codefendant. Therefore, we reject Smith's claim.

Exh. 149, pp. 4-6.

Smith's defense was that he was not present at either robbery.[4] McKnight's defense was that he was not present at the LaBelle robbery and that he punched Lydia Nieva and grabbed her purse but that he had no contact with Angel Nieva. These are not antagonistic defenses. The jury could believe both defenses or not believe either defense. He has failed to demonstrate that the Nevada Supreme Court's decision on federal ground 1 was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  Habeas relief on ground 1 is, therefore, denied.

**Ground 7**

Smith claims that the prosecutor and trial court made improper statements during voir dire, in violation of his Fifth, Sixth, and Fourteenth Amendment rights to due process, the presumption of innocence, and to be proven guilty beyond a reasonable doubt (ECF No. 44, pp. 28-31).

To warrant federal habeas relief, a challenged instruction cannot be merely "undesirable, erroneous, or even universally condemned," but must instead rise to the

---

[4] *See also* discussion of ground 10(A)(1), *infra*.

level of a constitutional violation. *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). The erroneous instruction must have "so infected the entire trial that the resulting conviction violated due process." *Id*. "Not every ambiguity, inconsistency, or deficiency in a jury instruction rise to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). The challenged instruction must be evaluated in the context of the overall charge to the jury as a component of the entire trial process. *Boyde v. California*, 494 U.S. 370, 378 (1990) ("A single instruction to a jury may not be judged in artificial isolation but must be view in the context of the overall charge.").

At the opening of voir dire, the state district court used a particular juror as a "sounding board" as the judge put it:

> THE COURT: You understand the process we're going through at this time is to try to get a jury that is fair and impartial to both sides.
>
> Do you understand that?
>
> PROSPECTIVE JUROR HETTERSCHEIDT: Yes.
>
> THE COURT: And as we sit here right now, do you understand that the defendants in this case are presumed to be innocent until the State proves the contrary, right?
>
> PROSPECTIVE JUROR HETTERSCHEIDT: Yes.
>
> THE COURT: And the State has to prove the contrary; that is, that they're guilty beyond a reasonable doubt before you could vote guilty, right?
>
> PROSPECTIVE JUROR HETTERSCHEIDT: Yes, sir.
>
> THE COURT: All right. If the State fails to carry that burden of proof, would you vote not guilty?
>
> PROSPECTIVE JUROR HETTERSCHEIDT: Yes.
>
> THE COURT: If they fail to carry the burden of proof beyond a reasonable doubt, will you vote not guilty?
>
> PROSPECTIVE JUROR HETTERSCHEIDT: Yes.

1

THE COURT: And if they do carry that burden of proof and prove the defendant is guilty beyond a reasonable doubt, will you vote guilty?

2

3

PROSPECTIVE JUROR HETTERSCHEIDT: Yes.

THE COURT: Alright. Do you understand as the defendants sit here that the presumption is that they're innocent. Do you understand that?

4

5

6

PROSPECTIVE JUROR HETTERSCHEIDT: Yes.

7

THE COURT: And so with that presumption of innocence, let's say that the defendants -- well, let's say right now the case was submitted to you, how would you vote?

8

9

PROSPECTIVE JUROR HETTERSCHEIDT: You have to vote innocent until presumed otherwise.

10

11

THE COURT: Because they're presumed innocent, right?

12

PROSPECTIVE JUROR HETTERSCHEIDT: Yes.

13

THE COURT: The State has to show otherwise, right?

14

PROSPECTIVE JUROR HETTERSCHEIDT: Yes.

15

16

THE COURT: They're the Plaintiff in this case and they brought the charge against you in the Superseding Indictment, right?

17

PROSPECTIVE JUROR HETTERSCHEIDT: Yes.

18

19

THE COURT: And you're aware this Indictment is just like a Complaint for any other lawsuit or whatever, it's a vehicle to get a case into court, whether it's civil or criminal; do you understand that?

20

21

PROSPECTIVE JUROR HETTERSCHEIDT: Yes.

22

THE COURT: And it's not any proof of their guilt; do you understand that?

23

24

PROSPECTIVE JUROR HETTERSCHEIDT: Yes.

25

THE COURT: If I ask everyone else those same questions, would any of you have answered differently than Mr. Steven Hetterscheidt? Would any of you have answered my questions differently?

26

27

Exh. 89, pp. 10-12.

28

13

Smith in particular complains that during the following exchange the judge improperly and incorrectly described the required standard for proof beyond a reasonable doubt to the jury pool:

> THE COURT: Well, let me ask you this. If someone brought a complaint against you for a traffic accident, do you feel you would have to prove that you didn't do it and they did it? Or do you think that they might have to prove that you were responsible?
>
> PROSPECTIVE JUROR SPOHN: I don't know. I mean –
>
> THE COURT: So if someone gets to the clerk's office first and files a complaint, you figure that if they filed one against you they should prevail?
>
> PROSPECTIVE JUROR SPOHN: No. I think that they should investigate, and what they find in their investigation. I don't know.
>
> THE COURT: That's why we have juries to find the facts. That piece of paper filed in court is not any evidence, it's how they get cases going; civil, criminal, anyway; do you understand that?

Exh. 89, p. 35.

Smith argues that using the civil example confused the reasonable doubt standard with the preponderance of the evidence standard. In its order affirming the convictions, the Nevada Supreme Court discussed that exchange as well as a comment by the prosecutor:

> Voir dire
>
> Smith claims that the prosecutor made improper statements regarding reasonable doubt during voir dire. It is improper for attorneys to "explain, elaborate on, or offer analogies or examples based on the statutory definition of reasonable doubt." *Evans v. State*, 117 Nev. 609, 632, 28 P.3d 498, 514 (2001). Here, the prosecution did not do so-- instead, the prosecutor simply stated, in response to a prospective juror's question about reasonable doubt:
>
> "You talked about we would have to really, really, really prove the case. That's not the burden of proof in a criminal case. That's not the law. The law is proof beyond a reasonable doubt, and the definition of that would be given to you by [the judge] in this case."

Moreover, even if that statement violated the rule against a lawyer explaining reasonable doubt, any error is harmless because the district court provided proper jury instructions on reasonable doubt. *Id*. at 631-32, 28 P.3d at 514.

Smith also complains that the judge misstated the burden of proof during voir dire by giving a civil litigation example, and that this amounted to judicial misconduct. Specifically, the district court asked a juror:

"THE COURT: Well, let me ask you this. If someone brought a complaint against you for a traffic accident, do you feel you would have to prove that you didn't do it and they did it? Or do you think that they might have to prove that you were responsible?

PROSPECTIVE JUROR [ ]: I don't know. I mean

THE COURT: So if someone gets to the clerk's office first and files a complaint, you figure that if they filed one against you they should prevail?"

Smith failed to object or move for a mistrial below. To preserve a judicial misconduct claim for appellate review, a party normally must object or move for a mistrial. *Holderer v. Aetna Cas. and Sur. Co.*, 114 Nev. 845, 850, 963 P.2d 459, 463 (1998). However, failure to object does not preclude judicial review "where judicial deportment is of an inappropriate but non-egregious and repetitive nature that becomes prejudicial when considered in its entirety." *Parodi v. Washoe Medical Ctr.*, 111 Nev. 365, 370, 892 P.2d 588, 591 (1995).

Although the district court used civil case examples to explain the law to prospective jurors in a criminal case, we conclude that these actions did not rise to the level of prejudice required for reversal, especially given the lack of contemporaneous objection by Smith. Here, Smith failed to demonstrate that the jury erroneously applied the preponderance-of-the-evidence standard just because a civil case happened to be mentioned during voir dire. And even if the district courts statements caused some confusion during voir dire, it was remedied when the court provided the correct jury instructions on reasonable doubt and the applicable burden of proof in this criminal case.

Exh. 149, pp. 3-4.[5]

Respondents point out that the trial judge also asked jurors a series of questions about whether they would be able to impose punishment, whether they had been a victim of a crime or had been in law enforcement and about whether serving on the jury

---

[5] The prosecutor's statements quoted here are found at ECF No. 89, pp. 48-49. The judge's statements quoted by the Nevada Supreme Court are found at ECF No. 89, p. 35.

would cause extreme hardship. The judge then questioned individual jurors at length depending on their responses. *See e.g.*, exh. 89, pp. 15-43. The defense failed to contemporaneously object to the alleged improper descriptions of the reasonable doubt standard. The Nevada Supreme Court concluded that, even assuming any statements were improper, Smith did not show that the jury applied a preponderance of the evidence standard. The appellate court also held that accurate jury instructions on reasonable doubt rectified any confusion. Smith has not demonstrated that this decision was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 7.

### b.  **Ineffective Assistance of Counsel Claims**

Smith argues that his trial and appellate counsel rendered ineffective assistance. Ineffective assistance of counsel (IAC) claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly

deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*.

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on

1   the merits. *Cullen*, 563 U.S. at 181-84. The Supreme Court has specifically reaffirmed

2   the extensive deference owed to a state court's decision regarding claims of ineffective

3   assistance of counsel:

4

5       Establishing that a state court's application of *Strickland* was
        unreasonable under § 2254(d) is all the more difficult. The standards
6       created by *Strickland* and § 2254(d) are both "highly deferential," *id*. at
        689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct.
7       2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review
        is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a
8       general one, so the range of reasonable applications is substantial. 556
        U.S. at 124. Federal habeas courts must guard against the danger of
9       equating unreasonableness under *Strickland* with unreasonableness
        under § 2254(d). When § 2254(d) applies, the question is whether there is
10      any reasonable argument that counsel satisfied *Strickland's* deferential
        standard.

11  *Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of

12  counsel must apply a 'strong presumption' that counsel's representation was within the

13  'wide range' of reasonable professional assistance." *Id*. at 104 (quoting *Strickland*, 466

14  U.S. at 689). "The question is whether an attorney's representation amounted to

15  incompetence under prevailing professional norms, not whether it deviated from best

16  practices or most common custom." *Id*. (internal quotations and citations omitted).

17      The claims that trial and appellate counsel rendered ineffective assistance largely

18  stem from the testimony of Detective Barry Jensen. Exh. 94, pp. 93-158; exh. 100, pp.

19  5-54. Prosecutor Stanton asked leading questions in order to try to confine Jensen's

20  testimony as agreed by the parties and the court prior to trial.  Jensen testified that

21  police obtained warrants to trace the Nievas' stolen cell phones.  Jensen said that police

22  traced one cell phone to a car that matched the description of a vehicle seen leaving the

23  area after the Nieva robbery. They checked the license plate and registration; it was the

24  car Shane Burton had reported stolen. One cell phone was recovered from the car.

25  Records of calls from that cell phone on the night in question led police to McKnight and

26  Smith. Police also found Target receipts that they traced back to Katherine LaBelle.

27  LaBelle later identified Smith from a photo lineup.

28

Jensen testified regarding the transcript of a September 24, 2007 interview with Smith. Smith admitted that he stole the Honda and let some other people use it but insisted that he did not participate in any robberies. He said he got the cellphone from the Honda when it was brought back to him. After Jensen told him that they had DNA and fingerprint evidence, Smith acknowledged that he had ridden in the car. During a second interview on October 2, Smith told Jensen that he got into Shane Burton's car after the Nieva robbery and searched through the tote bag (he had earlier described the appearance of the tote bag). Smith adamantly maintained that he was not present at, nor did he participate in either robbery. The Nieva robbery was reported to police at 2:28 a.m. Cell phone records reflect that a call was made from a Nieva cell phone at 2:54 a.am. to Nakita Burns, the mother of Smith's child and with whom Smith was living.

Detective Jensen also said that when he interviewed McKnight on September 27, McKnight admitted to him that he had committed the Nieva robbery. McKnight said his role was to rob Lydia. McKnight said he punched Lydia in the face, and she let go of her purse. He said he found an envelope with $1,000 in the purse that he never told Smith and Gibson about. He said he did not know what happened to Angel; he was not paying attention because he was going through the purse. He repeatedly denied having any contact with Angel at all. McKnight also repeatedly denied involvement in the Katherine LaBelle robbery.

i.   **Grounds 10(A)(1)-(3) are Procedurally Barred**

Respondents have previously moved to dismiss grounds 10(A)(1)-(3) as procedurally defaulted (ECF No. 52). Smith had argued that he can show cause and prejudice to excuse the procedural default of these trial IAC claims pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), which held that the failure of a court to appoint counsel, or the ineffective assistance of counsel in a state postconviction proceeding, may establish cause to overcome a procedural default in specific, narrowly-defined circumstances. To establish prejudice, Smith must show that his "underlying effective-assistance-of-trial-

counsel claim is a substantial one, which is the say that the prisoner must demonstrate

that the claim has some merit." *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014)

(providing guidelines for applying *Martinez*). Smith did not have counsel in his first state

postconviction petition, thus he can establish cause under *Martinez*. This court deferred

a decision regarding prejudice to this merits decision, as the court now has the benefit

of full briefing on these claims (*see* ECF No. 83, pp. 7-9).

### Ground 10(A)(1)

Smith asserts that his trial counsel was ineffective to the extent he failed to object

to leading questions asked of Detective Jensen as part of the State's attempt to avoid

confrontation clause issues in the joint trial (ECF No. 44, pp. 31-32). Trial counsel has

the "immediate and ultimate responsibility of deciding if and when to object, which

witnesses, if any, to call, and what defenses to develop." *Rhyne v. State*, 38 P.3d 163,

167 (Nev. 2002) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 93 (1977) (Burger, C.J.,

concurring)). Whether to object, even when a legal basis to do so exists, is a strategic

decision that is almost unchallengeable. *See Strickland*, 466 U.S. at 668.

As discussed above with respect to ground 1, Smith and co-defendant McKnight

filed motions to sever pursuant to *Bruton*. The trial court determined that the prosecution

would redact the relevant statements and ask Jensen leading questions in order to

prevent him from revealing restricted information, namely, to prevent him from naming

Smith or McKnight directly in certain instances.

The Nevada Supreme Court emphasized on direct appeal that the trial court has

discretion to permit the use of leading questions in some instances:

[T]his court has made plain that the district court has discretion to permit
leading questions on direct examination. NRS 50.115(3)(a); *Leonard v. State*,
117 Nev. 53, 70, 17 P.3d 397, 408 (2001).

Here, we conclude that any prejudice that may have resulted from the leading questions did not rise to the level of affecting Smith's substantial rights. In fact, the district court allowed leading questions to the benefit of both Smith and his codefendant. Therefore, we reject Smith's claim.

Exh. 149, pp. 5-6.

At the evidentiary hearing on Smith's state postconviction petition, defense counsel Jonathan McArthur testified that he and co-counsel Brian Bloomfield made strategic decisions with respect to potential *Bruton* issues in order to preserve a favorable pretrial ruling that prohibited McKnight from implicating Smith in the robberies. Exh. 170, pp. 5-49.[6] Smith cannot show prejudice. His statement to police did not implicate any co-defendant, while McKnight's statement implicated Smith. Smith reaped the benefit of the leading questions, which restricted the detective from revealing that McKnight's statement implicated Smith. This claim is not substantial. Thus, Smith

---

[6] *See also* McArthur's affidavit in response to Smith's state postconviction petition for writ of habeas corpus:

> McKnight had been subjected to a remedial, but questionable, ruling by the trial court, prohibiting McKnight from implicating Defendant Smith at trial as a participant in the robberies resulting in the death of the Victim. The trial court fashioned this remedy specifically to avoid having to sever the defendants and requiring two trials. However, the order prevented McKnight from pursuing his best defense, which would have been to shift the blame for the death to Smith. McKnight's counsel vigorously, but unsuccessfully, objected to the ruling on multiple occasions. When trial began, Judge Mosley, who had issued the ruling, was out of the jurisdiction and unable to hear the trial. The trial was instead heard by Senior Judge Brennan. Judge Brennan did not agree with the ruling that had been issued by Judge Mosley, but initially recognized that it was the rule of the case at the beginning of trial. Brennan specifically decried the unfairness of the ruling to McKnight and appeared to Smith's counsel to be inclined to overturn the ruling if encouraged by circumstances at trial to do so. As Smith was the direct beneficiary of the ruling, both Bloomfield and I agreed that we should try to preserve the ruling at any cost for the benefit of Smith. McKnight's counsel made it clear that if we "tried to throw McKnight under the bus" at trial, that they would insist on presenting McKnight as a witness in his own defense and revisit the issue of the Order in Limine with Brennan to have it reversed. Accordingly, Bloomfield and I strategically agreed to avoid casting unnecessary aspersions against McKnight and advised Smith that this would be the approach moving forward. Smith agreed to rely on our expertise in making strategic decisions at trial.

Exh. 167.

1    cannot establish prejudice to excuse the procedural default of this claim. Ground

2    10(A)(1) is dismissed as procedurally barred from federal habeas review.[7]

3        **Ground 10(A)(2)**

4        Smith claims that, to the extent that trial counsel was required to raise any such

5    objection in addition to objections he already made, he was ineffective for failing to seek

6    a specific instruction that the jury disregard the statement of McKnight for purposes of

7    determining the guilt of Smith (ECF No. 44, pp. 31-32).

8        The jury was instructed:

9            The conviction shall not be had on the testimony of an accomplice
10       unless he is corroborated by other evidence which in itself, and without the
         aid of the testimony of the accomplice, tends to connect the defendant
11       with the commission of the offense; and the corroboration shall not be
         sufficient if it merely shows the commission of the offense or the
12       circumstances thereof. An accomplice is hereby defined as one who is
         liable for prosecution, for the identical offense charged against the
13       defendant(s) on trial in the cause in which the testimony of the accomplice
         is given.
14

15           You are instructed that Ronnie Gibson is an accomplice in this
         case.
16
         Exh. 108, jury instruction no. 6.
17
         Smith's counsel had already lodged a continuing objection to the use of
18
     McKnight's statement. *See* exh. 55, p. 9. McKnight's statement was not admitted into
19
     evidence. When Detective Jensen testified as to McKnight's statement, he used neutral
20
     pronouns instead of naming Smith. Smith cannot show that the strategic decision not to
21
     seek additional jury instructions is assailable, particularly given that such an instruction
22
     would have further highlighted McKnight's statement. Ground 10(A)(2) is not a
23
     substantial claim of ineffective assistance of counsel. Smith has not established
24
     prejudice to excuse the procedural bar. Thus, ground 10(a)(2) is dismissed as
25
     procedurally barred.
26

27   [7]   As   respondents   point   out,   the   State   presented   overwhelming   evidence   of
     Smith's guilt apart from Jensen's testimony, including the testimony of Gibson and his girlfriend,
28   the physical evidence tying Smith to the car, his contact with victims' property and use of a victim's
     cell phone after the robberies.

1

**Ground 10(A)(3)**

2      Smith contends that, to the extent that trial counsel was not barred from doing so,

3   counsel was ineffective for failing to remedy the State's misleading testimony and

4   statements in closing argument by introducing the transcript of the statement that Smith

5   gave to the police. Smith alleges that to the extent that the trial court barred defense

6   counsel from doing so, counsel was ineffective for failing to challenge any such ruling

7   (ECF No. 44, pp. 31-33).

8      Defense counsel Bloomfield stated in an affidavit in response to the state

9   postconviction habeas corpus petition:

10
> Defendant argues that counsel should have objected to the
11   prosecutor's opening and closing statements that defendant gave cars to
   people for them to commit robberies and Defendant received proceeds
12   from the robberies. Counsel cannot be deemed ineffective for failing to
   make futile objections. During said trial, the above referenced facts came
13   from Defendant's own statements to police, which were introduced into
   evidence through the testimony of Detective Jensen.
14
   Exh. 166.

15      Defense counsel McArthur testified during the state postconviction evidentiary

16   hearing that the defense did suspect that Jensen misrepresented or extended Smith's

17   statements regarding stealing cars. Exh. 170, pp. 39-41.  The prosecutor repeated

18   those statements in arguments to the jury. But McArthur explained that the interview

19   was not recorded, so they were limited to attacking Jensen's credibility. The court

20   questioned Stanton as well as McArthur:

21
> THE COURT: So in their opening statements you indicate that he
22   had made some false statement?

23
> THE DEFENDANT: Yeah. They kept saying that I gave cars to
24   people to commit robberies.

25
> THE COURT: Is that your recollection, Mr. Stanton? Do you recall
26   that?

27      MR. STANTON: Yes.

28      THE COURT: And what was that based on?

23

1
2

        MR. STANTON: Detective Jensen's testimony of both the
September 24th and October 2nd statements.

3
4

        THE COURT: Is that your understanding of what the nature of the
testimony was, Mr. MacArthur?

5

        THE WITNESS [MCARTHUR]: That was the nature of Detective
Jensen's testimony, yes.

6
7

        THE COURT: Was there a basis for any objection?

8

        THE WITNESS: With my recollection, Your Honor, the reason why
we couldn't object at opening argument is, of course, Mr. Stanton is

9

entitled to his theory of the case. That was later substantiated by Detective
Jensen, who testified that during the unrecorded interview, for which the

10

defendant had been Mirandized, that he had ostensibly admitted to doing
car robberies and supplying them to other people for the purposes of

11

conducting robberies. However, the Defense felt as though that this was a
conclusion that had been arrived to by Detective Jensen, rather than

12

something that had been said by Mr. Smith. However, that did not provide
us with a basis to render an objection. All we could do is attack his

13

credibility on cross-examination. Therefore, there was no objection during
the State's case in chief. We did make an objection, I believe, in closing

14

argument related to that issue. But, again, Mr. Stanton was entitled to
summarize what he believed the State's evidence had shown. So I

15

understand the defendant's dissatisfaction with the way that went, but it
did not provide us with a legally recognizable basis for an objection.

16

17

 Exh. 170, pp. 39-41.

18

The Nevada Supreme Court affirmed the denial of this claim:

19
20

        Second, appellant claimed that his trial counsel failed to object to
misstatements of facts not in evidence. In particular, appellant claimed

21

that the prosecutor erroneously stated that he gave stolen cars to people
for them to commit robberies and received proceeds from the robberies.

22

Appellant claimed that this was a misstatement because it was not in his
transcribed statement to the police. Appellant's trial counsel

23

acknowledged that there was an objection during closing arguments, but
that there was no legal basis to challenge the statements. Appellant failed

24

to demonstrate that his trial counsel's performances were deficient or that
he was prejudiced. On direct examination, the detective testified that,

25

while denying participation in the robberies in this case, appellant admitted
that he had stolen the car used in this case and gave the car, for a fee, to

26

others for a robbery. On cross-examination, appellant's trial counsel
attempted to clarify the statement and provided a direct quotation from the

27

statement for the jury's consideration: appellant admitted that he "got cars
from people in the alley ... that need to pay bills, just to run errands, a

28

1
2
3
4
5

bunch of little shit, I take a car charge." Appellant denied that he knew what people did with the cars. The detective testified that appellant told him that his fee included being able to select property from the vehicle when it was brought back. Trial counsel objected to the State's characterization of this testimony during closing arguments. Appellant failed to indicate what further actions should have been taken by trial counsel to clarify his statement to the police and how such action by counsel would have had a reasonable probability of altering the outcome at trial.

6

Exh. 149, pp. 4-5.

7

This claim lacks merit. Trial counsel explained their strategic determinations with

8

respect to the evidence that Smith routinely stole cars, which was eminently reasonable.

9

Ground 10(A)(3) is not a substantial claim of ineffective assistance of trial counsel, and

10

therefore, Smith cannot establish prejudice to excuse the procedural default. Ground

11

10(A)(3) is dismissed as procedurally barred.

12

ii. **Remaining Claims of Ineffective Assistance of Trial Counsel**

13

**Ground 10(A)(8)**

14

Smith asserts that his counsel failed to properly file a motion to suppress the

15

content of statements improperly obtained from Smith. Counsel also failed to object to

16

the extensive use of the statement in closing (ECF No. 44, pp. 33-34). Defense counsel

17

McArthur testified at the evidentiary hearing on Smith's state postconviction petition that

18

the September 24, 2007 statement was transcribed and included a signed Miranda

19

waiver. Exh. 170, pp. 8-10. McArthur said that Detective Jensen testified that Smith

20

waived his Miranda rights and agreed to speak with Jensen on October 2, 2007.

21

The Nevada Supreme Court affirmed the denial of this claim in Smith's first state

22

postconviction petition:

23
24
25
26
27
28

First, appellant claimed that trial counsel failed to file a motion to suppress his statements to the police. Appellant claimed that his September statement contained bad acts from other robbery cases. Appellant claimed that the October statement was not recorded and transcribed, there was not a signed Miranda waiver, [FN2] and appellant made incriminating statements to knowing Ronnie Gibson, using the victim's stolen cell phone and receiving property in the instant case as payment for the vehicle he had stolen. Appellant's trial counsel testified that there was no legal basis to challenge the statements and the

credibility of the detective was pursued at trial. Appellant failed to demonstrate that his trial counsel's performances were deficient or that he was prejudiced. Appellant failed to demonstrate that there was a legal basis for suppressing the statements and that such a motion would have been successful. The detective testified that appellant was Mirandized before the interviews in September and October. No testimony was presented at trial that appellant committed other robberies. [FN3] Nothing requires the statement to the police to be recorded and transcribed in order to be admissible at trial. Finally, the fact that appellant made incriminating statements is not a basis to suppress an otherwise voluntary and knowing statement, for which the defendant waived his rights.

[FN2: *Miranda v. Arizona*, 384 U.S. 436 (1966).]

[FN3: At a pretrial hearing on April 16, 2009, it was discussed that redacted statements would not be presented as such to the juries, but the contents, using neutral pronouns, would be elicited through the detective's testimony. Appellant argued on direct appeal that a motion to sever should have been granted as he was unfairly prejudiced by the prosecutor asking leading questions to avoid problems under *Bruton v. United States*, 391 U.S. 123 (1968). *Smith v. State*, Docket No. 54397 (Order of Affirmance, January 31, 2011). This court considered and rejected appellant's claim that his substantial rights were prejudiced. To the extent that appellant attempts to revisit this holding, the doctrine of the law of the case prevents further litigation of this issue. *See Hall v. State*, 91 Nev. 314, 535 P.2d 797 (1975).]

Exh. 193, pp. 3-4.

Smith has failed to show that there was a legal basis to challenge the admissibility of his statements. He presents nothing to demonstrate that the Nevada Supreme Court's decision on federal ground 10(A)(8) was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d). Accordingly, relief on ground 10(A)(8) is denied.

**Ground 10(B)**

Smith urges that his trial counsel was ineffective for failing to present evidence of the location of the stolen Nieva cellphone (ECF No. 44, pp. 34-35).

Defense counsel McArthur testified at the state postconviction evidentiary hearing that the defense team made a tactical decision not to introduce evidence that

the cellphone was found in McKnight's apartment. Exh. 170, pp. 41-45. As touched on

with IAC claims discussed above, McArthur explained that when the original judge on

the case (who also presided over the evidentiary hearing) denied the motion he entered

a remedial order directing that McKnight would be precluded from inculpating Smith at

trial. A different judge tried the case. That judge disagreed with the order, but initially let

it stand. McKnight's counsel indicated to Smith's team that if they "threw McKnight

under the bus" that McKnight's team would revisit the issue and seek to have the order

reversed. Smith's team advised him that avoiding pointing the finger at McKnight was a

safer course. The presiding judge later *sua sponte* reversed the order. But McKnight

ultimately did not testify, thus Smith's defense was not impacted.[8]

The Nevada Supreme Court disagreed with Smith:

> Third, appellant claimed that trial counsel failed to present the fact
> that the stolen cell phone not recovered was traced to an apartment
> occupied by his codefendant Adrian McKnight. Appellant's counsel
> testified that this fact was strategically irrelevant, it could have opened the
> door to admitting prior bad acts of a similar nature involving cell phones,
> and it could have reopened the door regarding the pretrial ruling limiting
> McKnight's ability to incriminate Smith during trial. Appellant failed to
> demonstrate that his trial counsels' performances were deficient or that he
> was prejudiced. Appellant admitted to using one of the victim's cell
> phones. There was no evidence presented, at trial or at the evidentiary
> hearing, regarding the location of the non-recovered cell phone. Because
> appellant and the codefendant were convicted of conspiracy to commit
> robbery and robbery, the location of any item taken during the robbery or
> the identity of the individual who gained possession of items taken during
> the robbery was irrelevant and would not have had a reasonable
> probability of altering the outcome at trial.

Exh. 193, pp. 5-6.

Smith admitted to detectives that he used one of the cell phones. The fact that one

cell phone was recovered from McKnight's residence did not aid Smith's defense.

Defense counsel made a reasonable decision to try to preserve the favorable pre-trial

order prohibiting McKnight from inculpating Smith. Smith fails to demonstrate that the

---

[8] *See also* McArthur's affidavit. Exh. 167.

Nevada Supreme Court's decision on federal ground 10(B) was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d). Accordingly, relief on ground 10(B) is denied.

### iii. **Remaining Claims of Ineffective Assistance of Appellate Counsel**

With respect specifically to claims of ineffective assistance of appellate counsel, appellate counsel must "examine the record with a view to selecting the most promising issues for review." *Jones v. Barnes*, 463 U.S. 745, 752 (1983). Although "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Appellate counsel cannot be found to be ineffective for failure to raise an issue that lacks merit. *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). "In most cases, an unpreserved trial error will not be a plainly stronger ground for appeal than preserved errors. Thus, in most instances in which the trial court did not rule on the alleged trial error (because it was not preserved), the prisoner could not make out a substantial claim of ineffective assistance of appellate counsel . . ." *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) (Internal citations omitted).

**Ground 11(A)**

Smith argues that appellate counsel was ineffective for failing to argue that the admission of co-defendant McKnight's statements at the joint trial violated Smith's Sixth and Fourteenth Amendment right to confrontation (ECF No. 44, pp. 36-38). Respondents argue that while appellate counsel may not have used the specific phrase "confrontation clause" that the Nevada Supreme Court evaluated the confrontation issue and found that appellant counsel had properly challenged the denial of the motion to sever on direct appeal:

The Nevada Supreme Court affirmed the denial of this claim in Smith's state postconviction petition:

Second, appellant claimed that appellate counsel was ineffective for failing to argue that the denial of a motion to sever prevented him from confronting and cross-examining his codefendant, Adrian McKnight. Appellant also complained that McKnight's redacted confession was presented to the jury. Appellant failed to demonstrate that his appellate counsel's performance was deficient. Appellate counsel did challenge the denial of the motion to sever on appeal, and this court determined that he was not unfairly prejudiced by the denial of the motion, he was the beneficiary of a pretrial ruling made by Judge Mosley, and leading questions about statements made to the police did not affect appellant's substantial rights. *Smith v. State*, Docket No. 54397 (Order of Affirmance, January 31, 2011). Appellant failed to demonstrate a violation under *Bruton v. United States*, 391 U.S. 123 (1968) because the testimony about McKnight's statements to the police regarding other participants was not facially incriminating, was couched in neutral terms of "they" or "other people," and only became incriminating to appellant when linked with evidence introduced at trial.[FN 6] *See Richardson v. Marsh*,  481 U.S. 200, 208 (1987) (finding no Confrontation Clause violation because the redacted statements did not directly refer to the defendant, but became incriminating only when linked with evidence introduced later at trial); *Lisle v. State*, 113 Nev. 679, 692-93, 941 P.2d 459, 468 (1997) (rejecting Bruton claim where "the other guy" was used in a redacted statement because the statement was not incriminating to the defendant on its face, but only when linked with other evidence introduced later at trial). *But see Gray v. Maryland*, 523 U.S. 185, 192-196 (1998) (determining the right to confrontation was violated where redacted confession of the nontestifying codefendant included blanks, deletions, and symbols because the redactions facially incriminated Gray: obviously referred directly to someone, at times obviously Gray, and involved inferences that the jury could make immediately);[FN 7] *Ducksworth v. State*, 114 Nev. 951, 953-55, 966 P.2d 165, 166-67 (1998) (recognizing that where the nontestifying codefendant's redacted statement suggested the participation of another person and it was likely that the jury deduced this other person was the defendant, admission of the statement violated *Bruton* where there was only minimal, circumstantial evidence and the State implicitly conceded that the most damaging evidence against the defendant was the redacted statements). Further, part of appellant's defense hinged on only two persons being specifically observed by the victims as being involved in the crime and appellant used McKnight's statements to the police admitting McKnight's involvement in the Nievas robbery to support this defense.[FN 8] Given the substantial evidence presented against appellant at trial-the testimony of the victims, the evidence linking appellant to the stolen vehicle, the evidence linking appellant to the victim's cell phone, the testimony of Ronnie Gibson (the third defendant who testified against appellant and McKnight and was subject to confrontation and cross-examination by two teams of defense attorneys), and the testimony of K. Lyons who overheard appellant's inculpatory conversation with McKnight and Gibson, appellant failed to demonstrate that further arguments made

1

by appellate counsel would have had a reasonable probability of altering the outcome on appeal.

2

3

[FN 6: Indeed, McKnight's statements were presented after the State presented evidence from the victims describing the offenses, after Ronnie Gibson's testimony inculpating both appellant and McKnight in the crimes, after the testimony of K. Lyons who overheard a conversation between appellant, McKnight and Gibson, after the forensic testimony regarding appellant's fingerprints found on the stolen vehicle used during the crimes, and after the detective discussed appellant's statements to the police which linked him to the crime. The references to "they" and "other guys" in the testimony about McKnight's statement were minimal at best and at the conclusion of the State's case-in-chief. The neutral pronouns did not violate appellant's confrontation rights under the facts presented.]

4

5

6

7

8

9

[FN 7: Notably, the *Gray* Court did not overrule *Richardson*, but distinguished the facts presented in each case and appeared to recognize that a redaction referring to "a few other guys" may pass constitutional muster. 523 U.S. at 196.]

10

11

12

[FN 8: Appellant's counsel argued strenuously during trial that only two persons were observed by the victims to have participated in the crimes and the suggestion made by counsel was that it was appellant's co-defendant McKnight and Ronnie Gibson, who admitted to participating in the charged offenses. Appellant's counsel emphasized that appellant never wavered in his denial of participating in the robberies in question in this case.]

13

14

15

16

Exh. 193, pp. 7-9.

17

As the state appellate court noted, and as discussed earlier in this order, the jury

18

heard substantial evidence of Smith's guilt before McKnight's statement was introduced.

19

Neutral references to "they" and "other guys" in McKnight's statement were minimal.

20

Defense counsel was able to cross-examine Gibson. Smith has not shown that the

21

Nevada Supreme Court's decision on federal ground 11(A) was contrary to, or involved

22

an unreasonable application of, clearly established U.S. Supreme Court law, or was

23

based on an unreasonable determination of the facts in light of the evidence presented

24

in the state court proceeding.  28 U.S.C. § 2254(d). Thus, federal habeas relief is

25

denied as to ground 11(A).

26

**Ground 11(B)**

27

28

Smith alleges that appellate counsel was ineffective for failing to argue that Smith's Fifth, Sixth, and Fourteenth Amendment due process and fair trial rights were violated when the State presented Detective Jensen's false and highly prejudicial testimony (ECF No. 44, pp. 38-43). Smith argues that the detective inaccurately paraphrased some of Smith's statements to police, and that the prosecutor then repeated these paraphrased statements through questions and closing argument.

The Nevada Supreme Court disagreed that the statements were inaccurate or misleading:

> [A]ppellant claimed that his appellate counsel failed to argue that the prosecutor misstated evidence about appellant's procuring stolen vehicles and committed perjury. Appellant failed to demonstrate that his counsel's performance was deficient or that this issue would have had a reasonable likelihood of success on appeal. The prosecutor's statements regarding the stolen vehicles were supported by the testimony of the detective. To the extent that appellant claimed that the prosecutor suborned perjury, appellant failed to demonstrate that the detective or Ronnie [Gibson] committed perjury.

Exh. 193, p. 10.

This claim is meritless. Smith presents nothing in support of his assertions of perjury. *See also* discussion of ground 10(A)(3), *supra*. Smith fails to show that the Nevada Supreme Court's decision on federal ground 11(B) was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d). The court denies federal habeas relief on ground 11(B).

**Ground 11(C)**

Smith claims that appellate counsel failed to raise the claim that the trial court erred in denying a mistrial after Kennisha. Lyons' "highly prejudicial and irrelevant" testimony, in violation of his Fifth, Sixth, and Fourteenth Amendment rights to have his guilt proven beyond a reasonable doubt, due process and a fair trial (ECF No. 44, pp. 43-44).

On cross-examination, defense counsel asked Lyons why she did not contact the police after Gibson told her about the robbery and after they learned of Angel's death. Exh. 92, pt. 2, p. 117. She responded that Gibson told her he was scared that the other guys would hurt his mom and his sister. Defense counsel for both Smith and McKnight immediately objected, and the court struck the testimony.

The Nevada Supreme Court emphasized that the defense elicited the testimony:

> Fifth, appellant claimed that his appellate counsel failed to argue that the district court erred in denying a motion for mistrial based on K. Lyons' testimony that she did not come forward earlier because she was afraid appellant and McKnight would harm Ronnie Gibson's family. Appellant failed to demonstrate that his counsel's performance was deficient or that this issue would have had a reasonable likelihood of success on appeal. Lyons' answer was in response to a question asked by appellant's own counsel; thus, appellant was precluded from raising the issue on appeal. *Jones v. State*, 95 Nev. 613, 618, 600 P.2d 247, 250 (1979) (holding that where a defendant participates in an alleged error, he is estopped from raising any objection on appeal).

Exh. 193, pp. 10-11.

Defense counsel unintentionally elicited this brief statement. Again, especially in light of the other, substantial evidence adduced at trial, Smith has not shown a reasonable likelihood that this claim would have succeeded on appeal. He fails to demonstrate that the Nevada Supreme Court's decision on federal ground 11(C) was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d). Ground 11(C) is denied.

**Ground 11(D)**

Smith asserts that appellate counsel failed to argue that the State presented insufficient evidence to convict him in violation of Fifth and Fourteenth Amendment due process rights (ECF No. 44, pp. 44-45). "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)).  On federal habeas corpus review of a judgment of conviction pursuant to 28

U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16. On habeas review, this court must assume that the trier of fact resolved any evidentiary conflicts in favor of the prosecution and must defer to such resolution. *Id*. at 326. Generally, the credibility of witnesses is beyond the scope of a review of the sufficiency of the evidence. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

The Nevada Supreme Court rejected this claim:

> [A]ppellant claimed that his appellate counsel should have argued that there was insufficient evidence presented at trial. Appellant failed to demonstrate that this issue would have had a reasonable likelihood of success on appeal. Appellant offered no specific argument as to how the evidence was insufficient for each of the nine counts for which he was convicted.

Exh. 193, p. 10.

Smith cannot show a reasonable likelihood of success had this claim been raised on appeal. Viewing the evidence in the light most favorable to the prosecution, the State presented sufficient evidence to convict. Further, Smith did not specify how the evidence was insufficient. He has not shown that the Nevada Supreme Court's decision on federal ground 11(D) was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Ground 11(D) is denied.

**Ground 11(E)**

Smith alleges that appellate counsel failed to argue that his statements were admitted in violation of his Fifth and Fourteenth Amendment rights to be free from self-incrimination (ECF No. 44, pp. 46-47).

The Nevada Supreme Court affirmed the denial of this claim in Smith's state postconviction petition:

First, appellant claimed that trial counsel failed to file a motion to
suppress his statements to the police. Appellant claimed that his
September statement contained bad acts from other robbery cases.
Appellant claimed that the October statement was not recorded and
transcribed, there was not a signed Miranda waiver,[FN 2] and appellant
made incriminating statements to knowing Ronnie Gibson, using the
victim's stolen cell phone and receiving property in the instant case as
payment for the vehicle he had stolen. Appellant's trial counsel testified
that there was no legal basis to challenge the statements and the
credibility of the detective was pursued at trial. Appellant failed to
demonstrate that his trial counsel's performances were deficient or that he
was prejudiced. Appellant failed to demonstrate that there was a legal
basis for suppressing the statements and that such a motion would have
been successful. The detective testified that appellant was Mirandized
before the interviews in September and October. No testimony was
presented at trial that appellant committed other robberies. Nothing
requires the statement to the police to be recorded and transcribed in
order to be admissible at trial. Finally, the fact that appellant made
incriminating statements is not a basis to suppress an otherwise voluntary
and knowing statement, for which the defendant waived his rights.

[FN 2: *Miranda v. Arizona*, 384 U.S. 436 (1966).

Exh. 193, p. 6.

No legal basis existed for trial counsel to challenge the admission of Smith's

statements. *See also* discussion of ground 10(A)(3), *supra*. Thus, Smith could not have

prevailed on a claim that appellate counsel was ineffective for declining to raise that

claim. Smith has failed to demonstrate that the Nevada Supreme Court's decision on

federal ground 11(E) was contrary to, or involved an unreasonable application of, clearly

established U.S. Supreme Court law, or was based on an unreasonable determination

of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §

2254(d). The court, therefore, denies relief as to ground 11(E).

c.  **Cumulative Error Claim**

**Ground 12**

Finally, Smith contends that the cumulative effect of multiple trial errors infected

his trial with such unfairness that his Fourteenth Amendment due process rights were

violated (ECF No. 44, p. 47).

The cumulative effect of multiple errors can violate due process and warrant habeas relief where the errors have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).

The Nevada Supreme Court denied this claim on direct appeal:

> Cumulative error can violate a defendant's constitutional right to a fair trial. *Valdez v. State*, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008),. This court considers the following factors for a cumulative error claim: (1) if the issue of guilt is close, (2) the errors' size and character, and (3) the severity of the charged crime. *Id*. Although first-degree murder is a serious charge, we conclude that any error that may have occurred in this case was harmless and the issue of guilt was not close. Therefore, we reject Smith's cumulative error claim.

Exh. 149, p. 7.

Smith has not demonstrated error to cumulate. In light of the substantial evidence presented Smith has not demonstrated that the Nevada Supreme Court's decision on federal ground 12 was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d). Accordingly, relief on ground 12 is denied.

The petition, therefore, is denied in its entirety.

## V.    Certificate of Appealability

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Having reviewed its determinations and rulings in adjudicating Smith's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of Smith's petition.

### VI.    Conclusion

**IT IS THEREFORE ORDERED** that the second-amended petition (ECF No. 44) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** the Clerk of the Court is directed to substitute William Gittere for Respondent Renee Baker.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly and close this case.

DATED: 12 May 2022.

ROBERT C. JONES
UNITED STATES DISTRICT JUDGE